O

1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                   CENTRAL DISTRICT OF CALIFORNIA
10
11   SAMUEL Z.,                          )   Case No. 8:20-cv-01924-SP
12                  Plaintiff,           )
                                         )
13           v.                          )   MEMORANDUM OPINION AND
                                         )   ORDER
14   KILOLO KIJAKAZI, Acting             )
15   Commissioner of Social Security     )
     Administration,                     )
16                                       )
                    Defendant.           )
17                                       )
18   _____)
19                             **I.**
20                     **INTRODUCTION**
21           On October 5, 2020, plaintiff Samuel Z. filed a complaint against defendant,
22   the Commissioner of the Social Security Administration ("Commissioner"),
23   seeking a review of a period of disability and denial of disability insurance benefits
24   ("DIB").  The parties have fully briefed the issues in dispute, and the court deems
25   the matter suitable for adjudication without oral argument.
26           Plaintiff presents five disputed issues for decision: (1) whether the
27   Administrative Law Judge ("ALJ") properly considered plaintiff's subjective
28

1

testimony; (2) whether the ALJ properly considered the opinion of Dr. Mark Jason; (3) whether the ALJ properly considered the opinion of Dr. Shahryar Mousavi; (4) whether the ALJ properly considered plaintiff's upper extremity limitations in the residual functional capacity ("RFC") determination; and (5) whether the ALJ properly considered third party testimony.  Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 1-23; *see* Defendant's Memorandum in Support of Answer ("D. Mem.") at 2-13.

Having carefully studied the parties' memoranda, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly considered plaintiff's testimony, the upper extremities limitations, and the lay testimony.  But the ALJ failed to properly consider the medical opinions.  The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 50 years old on the alleged onset of disability date, is a high school graduate.  AR at 83, 88.  Plaintiff has past relevant work as an office manager, sales clerk, and sales representative.  *Id*. at 52.

On November 3, 2017, plaintiff filed an application for a period of disability and DIB due to a double hip replacement, cervical spine injury, and chronic pain on the left side.[1]  *Id*. at 83-84.  The application was denied initially and upon reconsideration, after which plaintiff filed a request for a hearing.  *Id*. at 117-20, 125-31.

On October 23, 2019, plaintiff, represented by counsel, appeared and

---

[1]  Plaintiff previously applied for a period of disability and DIB in September 2012, which was denied initially.  AR at 84.

2

1   testified at a hearing before the ALJ.  *Id*. at 34-81.  The ALJ also heard testimony

2   from Kathleen Doehla, a vocational expert.  *Id*. at 47-52, 57-58, 75-79.  On

3   November 15, 2019, the ALJ denied plaintiff's claim for benefits.  *Id*. at 17-28.

4        Applying the well-known five-step sequential evaluation process, the ALJ

5   found, at step one, that plaintiff had not engaged in substantial gainful activity

6   since the alleged onset date, August 25, 2017.  *Id*. at 19.

7        At step two, the ALJ found plaintiff suffered from the severe impairments of

8   degenerative joint disease of the cervical and lumbar spine; degenerative joint

9   disease of the bilateral hips, status post bilateral hip replacements; degenerative

10   joint disease of the bilateral shoulders, status post surgical repairs; and rheumatoid

11   arthritis.  *Id*. at 20.

12        At step three, the ALJ found plaintiff's impairments, whether individually or

13   in combination, did not meet or medically equal one of the listed impairments set

14   forth in 20 C.F.R. part 404, Subpart P, Appendix 1.  *Id.* at 22.

15        The ALJ then assessed plaintiff's RFC,[2] and determined plaintiff had the

16   RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with the

17   limitations that plaintiff: could occasionally climb ramps and stairs; could never

18   climb ladders, ropes, or scaffolds; could occasionally balance, stoop, kneel, and

19   crouch; could never crawl; could occasionally reach overhead bilaterally; could

20   frequently reach in other directions from the shoulder height down; could

21   frequently handle and finger bilaterally; and had no restrictions on feeling.  *Id*. at

22   23.  The ALJ also precluded plaintiff from working in the presence of concentrated

23

24   _____

25        [2]   Residual functional capacity is what a claimant can do despite existing
     exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152, 1155-
26   56 n.5-7 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation,
     the ALJ must proceed to an intermediate step in which the ALJ assesses the
27   claimant's residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151
     n.2 (9th Cir. 2007).
28

exposure to vibration, unprotected heights, or hazardous machinery, and stated he should not be required to operate a motor vehicle as part of the job duties. *Id*.

The ALJ found, at step four, that plaintiff was able to perform his past relevant work as an office manager. *Id*. at 28. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act. *Id*.

Plaintiff filed a timely request for review of the ALJ's decision, which the Appeals Council denied. *Id.* at 1-3. The ALJ's decision stands as the final decision of the Commissioner.

### III.

### <u>STANDARD OF REVIEW</u>

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration ("SSA") must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be

1  affirmed simply by isolating a specific quantum of supporting evidence.'"

2  *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

3  Cir. 1998)).  If the evidence can reasonably support either affirming or reversing

4  the ALJ's decision, the reviewing court "'may not substitute its judgment for that

5  of the ALJ.'"  *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.

6  1992)).

## IV.

## DISCUSSION

### A.    The ALJ Properly Considered Plaintiff's Testimony

10  Plaintiff contends the ALJ failed to properly evaluate his testimony.  P.

11  Mem. at 1-9.  Specifically, plaintiff argues the ALJ's reasons for discounting his

12  testimony were not clear and convincing and supported by substantial evidence.[3]

13  The court looks to Social Security Ruling ("SSR") 16-3p for guidance on

14  evaluating plaintiff's alleged symptoms.  In adopting SSR 16-3p, the SSA sought

15  to "clarify that subjective symptom evaluation is not an examination of an

16  individual's character."  *Id.* at *2.

17  [SSR 16-3p] makes clear what our precedent already required: that

18  assessments of an individual's testimony by an ALJ are designed to

19  evaluate the intensity and persistence of symptoms after the ALJ finds

20  that the individual has a medically determinable impairment(s) that

21  could reasonably be expected to produce those symptoms, and not to

22  delve into wide-ranging scrutiny of the claimant's character and

23  apparent truthfulness.

24  _____

25  [3]    While discussing plaintiff's credibility, the ALJ stated that she found

26  plaintiff limited to "light work."  AR at 24.  Plaintiff asserts the ALJ's entire
   decision is undermined by this "internal consistency."  P. Mem. at 7.  Reading the

27  decision as a whole, this reference to "light work" was plainly a typographical

28  error.  A typographical error does not undermine an entire decision.

1  *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (cleaned up).

2      To evaluate a claimant's symptom testimony, the ALJ engages in a two-step

3  analysis.  *Christine G. v. Saul*, 402 F. Supp. 3d 913, 921 (C.D. Cal. 2019) (quoting

4  *Trevizo*, 871 F.3d at 678).  First, the ALJ must determine whether the claimant

5  produced objective medical evidence of an underlying impairment that could

6  reasonably be expected to produce the symptoms alleged.  *Id.*  Second, if plaintiff

7  satisfies the first step, and there is no evidence of malingering, the ALJ must

8  evaluate the intensity and persistence of the claimant's symptoms and determine

9  the extent to which they limit her ability to perform work-related activities.  *Id.*

10      In assessing intensity and persistence, the ALJ may consider: the claimant's

11  daily activities; the location, duration, frequency, and intensity of the symptoms;

12  precipitating and aggravating factors; the type, dosage, effectiveness, and side

13  effects of medication taken to alleviate the symptoms; other treatment received;

14  other measures used to relieve the symptoms; and other factors concerning the

15  claimant's functional limitations and restrictions due to the symptoms.  *Id.* (citing

16  20 C.F.R. § 416.929; SSR 16-3p, 2017 WL 5180304, at *4; *Smolen v. Chater*, 80

17  F.3d 1273, 1284 (9th Cir. 1996).  To reject the claimant's subjective symptom

18  statements at step two, the ALJ must provide "specific, clear, and convincing"

19  reasons, supported by substantial evidence in the record, for doing so.  *Id.* at 1283-

20  84.

21      At the first step, the ALJ here found plaintiff's medically determinable

22  impairments could reasonably be expected to cause the symptoms alleged.  AR at

23  24.  At the second step, because the ALJ did not find any evidence of malingering,

24  the ALJ was required to provide clear and convincing reasons for discounting

25  plaintiff's testimony.  The ALJ found plaintiff's testimony to be not entirely

26  credible because: (1) he made inconsistent statements; (2) his activities exceeded

27  his alleged limitations; and (3) his alleged limitations were inconsistent with the

28

medical evidence. *See id*. at 19, 23-24.

In an Exertional Questionnaire dated November 20, 2017, plaintiff stated he has had shoulder and neck pain ever since his first cervical spine surgery in 2011 and that any repetitive motion causes the pain. *Id*. at 209-10. Plaintiff stated that he tried to walk two miles a day, which took about 30 minutes to complete and sometimes hurt. *Id*. at 209. Plaintiff further stated he could lift and carry 20 pounds, shop for groceries, do laundry, and do light yard work. *Id*. at 210. Plaintiff stated he needed to sit and rest every couple of hours and he could only sleep four hours at a time. *Id*. at 211.

At the October 23, 2019 hearing, plaintiff testified that he has pain in his neck, shoulders, arms, hands, hips, leg, feet, and joints. *Id*. at 59. Plaintiff explained rheumatological arthritis caused the pain in his joints and scar tissue from multiple cervical spine surgeries damaged his nerves, resulting in arm and hand pain. *Id*. at 59-60. Plaintiff testified that repetitive motions or strains aggravated the pain. *Id*. at 61. Plaintiff testified that he could lift ten pounds, could only sit for 15 minutes before needing to change positions, could only stand for 15 minutes in one spot, and had five to six bad days a month. *Id*. at 61-63. Plaintiff further testified his hands hurt turning a door knob, twisting, and grabbing. *Id*. at 65. Plaintiff stated a slower reaction time, memory loss, and fatigue are side effects of his pain medications. *Id*. at 66. Plaintiff estimated that, even with sleeping and pain medications, he only slept three hours at a time. *Id*. at 68.

As for his activities, plaintiff testified that he lives with his mother, takes care of her, does household chores, gardens, and walks the dog. *Id*. at 39-40, 69, 72. Plaintiff testified he takes frequent 20-25 minutes walks with stops and spends four to six hours a day in a reclined position. *Id*. at 61-62. Regarding his work, plaintiff testified that he tried to do some handyman work and when he had work,

he made an average of $200 a month. *Id*. at 45.  Plaintiff stated he drove 30 minutes to the hearing without problems. *Id*. at 41.  Plaintiff further testified he drove to Arizona three times in the past year and went on a cruise to Catalina in 2018. *Id.* at 72-73.

The ALJ's first reason for discounting plaintiff's testimony was that plaintiff made inconsistent statements.  AR at 23-24; *see Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (en banc) (an ALJ "may discredit the claimant's allegations based on inconsistencies").  The ALJ correctly noted plaintiff's inconsistencies about the side effects from his medications.  AR at 24.  Plaintiff testified at the October 2019 hearing that the side effects of his medication were memory loss, slower reaction time, and fatigue. *Id*. at 66.  But plaintiff repeatedly told his pain specialist throughout 2018 and 2019 that he experienced no side effects from his medications. *See, e.g., id*. at 391, 403, 406, 470, 488, 497.  Plaintiff also routinely reported to his primary care physician throughout 2018 that he suffered no memory loss or fatigue. *See, e.g., id.* at 438-39, 443, 448-49.  Contrary to plaintiff's characterization, that this was not "at best a single inconsistency." *See* P. Mem. at 6.

Similarly, the ALJ accurately observed that plaintiff's statements about his work were inconsistent.  AR at 19-20.  Plaintiff testified that after he stopped working at Lowe's, he tried to work as a handyman, but the months when he had work he only averaged about $200 a month. *Id*. at 45.  As the ALJ noted, the record strongly suggests that plaintiff in fact worked with regularity.  In September 2017, plaintiff reported working as a handyman. *Id*. at 304.  In a January 2018 letter, plaintiff's treating physician wrote that plaintiff worked as a handyman. *Id*. at 343.  In February 2018, plaintiff told a consulting physician that he was working as a handyman. *Id*. at 348.  In July 2018, plaintiff told one physician that he was a handyman and another physician that it was difficult to work as a handyman

because it hurt to move his head.  *Id*. at 532, 549.  In December 2018, just weeks before his right shoulder surgery, plaintiff reported he could only work part-time as a handyman.  *Id*. at 410.  And in February 2019, during a post-op examination, plaintiff stated he was "back working" and would like to delay evaluation of his left shoulder surgery until the fall "when his work tends to slow down."  *Id*. at 512. The record reflects plaintiff's handyman work was not as sporadic or limited as his testimony implied.

The ALJ's second reason for discounting plaintiff's testimony was his activities were inconsistent with his claimed degree of impairment.  *Id*. at 24; *see Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (in making a credibility determination, an ALJ may consider inconsistencies between a claimant's testimony and conduct); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  Plaintiff alleges he can only sit for 15 minute before needing to change positions.  AR at 61.  But plaintiff was able to drive 30 minutes to the hearing and sit an hour at the hearing without problems.  *Id*. at 41.  Plaintiff was also able to drive to and back from Arizona three times in the year prior to the hearing.  *Id*. at 72.  Plaintiff also testified he has pain in his legs and feet and could only stand in one spot for 15 minutes at a time.  *Id*. at 61-62.  Yet, plaintiff testified he took frequent 20-25 minute walks and stated in his Exertional Questionnaire that he walked two miles in about 30 minutes.[4]  *Id*. at 62, 209. Although plaintiff's walks do not directly contradict his alleged standing limitations, the length of plaintiff's walks and the speed appears inconsistent with his alleged leg and feet pain.

Finally, the ALJ found plaintiff less credible because his allegations were inconsistent with the objective medical evidence.  *Id*. at 24; *see Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (lack of corroborative objective

---

[4]    Plaintiff also reported to his primary care physician he walked three miles a day.  *See e.g.,* AR at 426, 431, 434.

medical evidence may be one factor in evaluating credibility).  The record shows plaintiff routinely complained of hip, neck, hand, and shoulder pain.  The ALJ recognized plaintiff had multiple hip, neck, and shoulder surgeries.  AR at 20-21.  But the ALJ noted that plaintiff recovered well from the hip and shoulder surgeries.  *Id*.  Plaintiff had a normal gait after the hip surgery, the right shoulder surgery was a success, and presumably, the left shoulder surgery would be equally successful.  *Id*.; *see Morgan v. Comm'r*, 169 F.3d 595, 599 (9th Cir. 1999) (response to treatment supports an adverse credibility determination).  The ALJ noted the whole body scan reflected mild impairments.  Finally, the ALJ found that although there was objective evidence supporting a carpal tunnel syndrome diagnosis in 2017, there was also a normal test and negative findings.  Thus, there was objective evidence to support plaintiff's allegations, but the evidence also reasonably supported the ALJ's determination that plaintiff's symptoms were not as severe as he alleges, particularly with regard to his shoulder and hip pain.  As such, the court may not substitute its judgment for that of the ALJ.  *See Aukland*, 257 F.3d at 1035.

Accordingly, the ALJ properly discounted plaintiff's subjective allegations.  The ALJ cited clear and convincing reasons supported by substantial evidence for finding plaintiff less credible.

**B.**   **The ALJ Failed to Properly Consider Two Medical Opinions**

Plaintiff argues that ALJ failed to properly consider the opinions of physicians Dr. Mark Jason and Dr. Shahryar Mousavi.  P. Mem. at 10-19.  Specifically, plaintiff asserts the ALJ improperly rejected Dr. Jason's and Dr. Mousavi's opinions concerning upper extremity limitations and absences.  *Id*.

RFC is what one can "still do despite [his or her] limitations."  20 C.F.R. § 404.1545(a)(1).  The ALJ reaches an RFC determination by reviewing and considering all of the relevant evidence, including non-severe impairments.  20

C.F.R. § 404.1545(a)(1)-(2); *see* SSR 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").

Among the evidence an ALJ relies on in an RFC assessment is medical evidence and opinions. 20 C.F.R. § 404.1545(a)(3). For claims filed before March 27, 2017, the opinion of a treating physician was given more weight then an examining physician's opinion, which was given more weight than a reviewing physician's opinion. *See Holohan*, 246 F.3d at 1202. Under this previous hierarchy of medical opinions framework, the Ninth Circuit required an ALJ to provide clear and convincing reasons supported by substantial evidence to reject an uncontradicted opinion of a treating or examining physician, or specific and legitimate reasons supported by substantial evidence to reject a contradicted opinion of a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (as amended).

Under the revised regulations, for cases filed on or after March 27, 2017 such as this one, an ALJ will no longer defer or give specific evidentiary weight to any medical opinions. 20 C.F.R. § 404.1520c(a).

> For claims subject to the new regulations, the former hierarchy of medical opinions – in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant – no longer applies. Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence.

*Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). As such, the previous requirement that an ALJ provide "specific and legitimate" reasons to reject a treating or examining physician's opinion "is clearly irreconcilable" with the new regulations. *Id.* at 790.

An ALJ will now consider the persuasiveness of the medical opinions and findings based on five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(b)-(c). The most important of these factors are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). The ALJ "must 'articulate . . . how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source . . . and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(b)(2)). The ALJ may, but is not required to, explain how she or he considered the other three factors. 20 C.F.R. § 404.1520c(b)(2). But when two or more medical opinions "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is then required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. § 404.1520c(b)(3).

## 1. **Dr. Mark Jason**

Plaintiff contends the ALJ offered insufficient reasons for rejecting Dr. Jason's opinion regarding plaintiff's upper extremity limitations and expected absences. P. Mem. at 13-16. Specifically, plaintiff argues the ALJ offered conclusory, generic rationale without any actual explanation or reference to evidence. *Id*. at 13-14. Plaintiff also argues the ALJ failed to address Dr. Jason's opinion about absences. *See id*. at 15-16.

Dr. Mark Jason, rheumatologist, treated plaintiff from August 2017 through at least the date of the hearing. *See* AR at 537-40, 596. At the initial visit, Dr. Jason noted plaintiff's lab work was negative for antibodies and plaintiff denied fatigue, myalgias, and weakness. *Id*. at 538. Dr. Jason observed plaintiff had normal strength, reflexes, sensation, range of motion, and joints and extremities,

but plaintiff had spasm in the spine, pain in the iliac crest region, and it hurt for him to move his neck. *Id.* at 538-39. Dr. Jason ordered a whole body scan in September 2017, which showed: slightly decreased flow to the left hand of uncertain significance; diffuse mild activity related to the joints of the hands which is relatively symmetric; mild activity related to the left second metacarphophalandgeal joint; small area of focal activity related to the anterior sixth costochondral cartilage most likely post-traumatic; and the remainder of joints were otherwise normal. *Id*. at 330. At the follow up examination two weeks later, Dr. Jason reviewed the whole body scan results, noted plaintiff had an overall pain level of 3.5/10, and assessed plaintiff had multiple joint pain. *Id*. at 339. Based on these two examinations and findings, Dr. Jason diagnosed plaintiff with rheumatoid arthritis of multiple degenerative joints, chronic pain, and carpal tunnel syndrome and opined plaintiff was "totally disabled." *Id*. at 333-34.

Dr. Jason examined plaintiff again on March 7 and May 3, 2018. *Id*. at 377-81. At the March 2018 examination, plaintiff complained he had a stiff, painful neck that was popping, a sore left hip, right ankle pain, and right hand pain, but also reported he had no tingling or numbness; no neck, hand, and lower back pain; and no swelling or stiffness in his hands. *Id*. at 377-78. The only objective findings from the two visits were on May 2018, in which Dr. Jason observed plaintiff's neck was stuck tilting to the left and he had decreased range of motion in his cervical spine. *Id*. at 380.

On May 4, 2018, Dr. Jason completed a Medical Evaluation Form. *Id*. at 382-84. Dr. Jason diagnosed plaintiff with rheumatoid arthritis, carpal tunnel syndrome, osteoarthritis, and a history of cervical and hip surgeries. *Id*. at 382. Dr. Jason checked that plaintiff's fatigue or the side effects of his medication would affect his concentration more than two-thirds of the workday. *Id*. Dr. Jason opined that plaintiff could not work if he to had sit, stand, or alternate between

1  sitting and standing for six hours in an eight-hour workday.  *Id*. at 383.  Dr. Jason

2  further opined that plaintiff: needed to rest four to six hours in an eight-hour

3  workday; would need unscheduled breaks; could lift and carry up to ten pounds

4  frequently; could not frequently use his hands to grasp, push, pull, and for fine

5  manipulation; could not push or pull frequently with his legs; could frequently

6  kneel; should avoid unprotected heights, moving machinery, and driving

7  automobile equipment; and was likely to be absent more than three times a month.

8  *Id*. at 383-84.

9        Dr. Jason examined plaintiff four more times.  Dr. Jason again observed

10  plaintiff had a tilted neck with reduced range of motion in July 2018, but noted that

11  he looked much better and was moving normally in October 2018.  *Id*. at 547-50.

12  Shortly before plaintiff's December 2018 right shoulder surgery, Dr. Jason noted

13  that plaintiff had multiple cortosine injections in his hands for trigger fingers,[5] he

14  moved stiffly with his head bent, his hips were sore, and he had painful range of

15  motion in his shoulders.  *Id*. at 410.  At plaintiff's next examination eight months

16  later, plaintiff reported having a flare up and Dr. Jason observed plaintiff had

17  diffuse synovitis in his fingers, wrists, and elbows.  *Id*. at 541.  Dr. Jason wrote a

18  letter recommending plaintiff be granted disability because he was unable to work.

19  *Id*. at 596.

20        As relevant, the ALJ limited plaintiff to occasional overheard reaching

21  bilaterally, frequent reaching in other directions from the shoulder height down,

22  and frequent handling and fingering bilaterally, and precluded him from

23  concentrated exposure to vibration, unprotected heights or hazardous machinery,

24  and operating a motor vehicle as part of his job duties.  *Id*. at 23.  In reaching her

25

26

27       [5]  Dr. Jason stated an orthopedic hand surgeon administered the cortisone

injections.  AR at 410.  The treatment notes documenting these injections are not

28  included in the record.

RFC determination, the ALJ rejected Dr. Jason's opinion that plaintiff was "totally disabled" and "unable to work" because those issues are reserved for the Commissioner. *Id*. at 26.  The ALJ then stated that Dr. Jason's opined limitations were "less than consistent with the recent medical evidence" and portions of plaintiff's own testimony, but to the extent they were "partially consistent with the totality of evidence," the ALJ find that plaintiff should be limited to sedentary work. *Id*.  The ALJ further stated that her preclusions adequately addressed plaintiff's concentration issues. *Id.*

Although the ALJ correctly rejected Dr. Jason's opinion that plaintiff was disabled and unable to work, the remainder of her analysis was flawed. *See* 20 C.F.R. § 404.1520b(c)(3) (disability determination is an issue reserved for the Commissioner).  The ALJ must articulate how persuasive the medical opinions are and explain how she considered the supportability and consistency factors in reaching her decision. *Woods*, 32 F.4th at 792.  Here, the ALJ failed to articulate how persuasive she found Dr. Jason's opinion to be.  Defendant argues that a reviewing court may draw inferences from an opinion and an ALJ need not recite "magic words."  D. Mem. at 6 n.2 (citing *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).  Notwithstanding the fact that the new regulations specifically require the ALJ to articulate how persuasive she finds the medical opinion, here the court may not even draw inferences from the ALJ's decision because it is too vague and conclusory.  It is unclear what and how much the ALJ found persuasive, and what she found not persuasive.

Moreover, the ALJ failed to explain how she considered the supportability and consistency factors as well.  "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence'" and "[c]onsistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources

1    and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 791-92 (quoting 20

2    C.F.R. § 404.1520c(c)(1)-(2)).  The ALJ failed to cite which of Dr. Jason's opined

3    limitations she accepted, and how those opined limitation were supported by the

4    objective medical evidence.  And although the ALJ stated that Dr. Jason's opined

5    limitations were inconsistent with the recent medical evidence and plaintiff's own

6    testimony, she did not specify which limitations were inconsistent, what "recent

7    medical evidence" it was inconsistent with, and which portions of plaintiff's

8    testimony conflicted with Dr. Jason's opinion.  A mere reference to "recent

9    evidence" and "testimony" is too vague to constitute sufficient evidence.

10        As such, the ALJ failed to properly evaluate Dr. Jason's opinion.[6]

11        **2.    Dr. Shahryar Mousavi**

12        Plaintiff argues the ALJ also failed to properly consider Dr. Shahryar

13    Mousavi's opinion regarding plaintiff's upper extremity limitations and likely

14    absences.  P. Mem. at 16-19.

15        Dr. Mousavi, a pain specialist, treated plaintiff from December 2017 through

16    at least the date of the hearing.  AR at 319-20.  At the initial examination, plaintiff

17    reported he suffered from neck and hip pain, had failed cervical spine surgeries,

18    was recovering well from a bilateral hip replacement 50 days prior, and needed

19    medications without side effects.  *Id*. at 319.  Dr. Mousavi observed plaintiff was in

20    no distress and diagnosed plaintiff with chronic pain syndrome, other cervical disc

21    degeneration, arthropathy of cervical facet joint, failed back syndrome of the

---

23    [6]   Plaintiff also argues that the ALJ should have considered his specialty and
24    treatment relationship.  P. Mem. at 12, 14-15.  The regulations only require the
      ALJ to explain how he or she considered the factors of supportability and
25    consistency.  20 C.F.R. § 404.1520c(b)(2).  If, on remand, the ALJ finds Dr.
26    Jason's opinion and another physician's opinon about the same issue are both
      equally well-supported and consistent with the record but are not exactly the same,
27    then she shall articulate how she considers the other factors such as relationship
28    with the claimant and speciality.  20 C.F.R. § 404.1520c(b)(3).

cervical spine,[7] opiate dependence, and osteoarthritis of hip.  *Id*. at 319-20.  At subsequent examinations, plaintiff routinely complained of neck pain radiating to his left upper extremity, numbness of the extremities, and pain in other parts of the body.  *See, e.g., id*. at 352, 391, 398, 492, 494, 497.  A May 2018 MRI of the cervical spine reflected mild degenerative changes and foraminal narrowing at multiple levels, but Dr. Mousavi otherwise observed primarily objective normal findings in 2018.  *See id.* at 352, 354, 392, 398, 401, 404, 406, 408.  In July 2018, Dr. Mousavi explained plaintiff's symptoms and history of chronic opiate use were suggestive of dependency to opiates.  *Id*. at 404.  In 2019, Dr. Mousavi observed tenderness over the cervical spine, thoracic spine, lumbar spine, and trapezius muscles; decreased range of motion in the cervical spine; decreased position sense in the upper extremities; trigger fingers; positive compression tests; and positive quadrant's tests.  *See id.* at 480, 485-86, 490, 494.  Dr. Mousavi treated plaintiff with trigger point injections in his thoracic spine and cervical facet and branch blocks.  *See id*. at 390, 396, 399.

Dr. Mousavi completed a Medical Evaluation Form on May 20, 2018.  *Id*. at 386-88.  Dr. Mousavi diagnosed plaintiff with:  cervical degenerative disc disease, failed cervical spine surgery, cervical radiculopathy, and chronic pain syndrome.  *Id*. at 386.  Dr. Mousavi opined plaintiff's fatigue or medication side effects would frequently interfere with his ability to concentrate up to two-thirds of an eight-hour workday and his condition would interfere with his ability to keep his neck in a constant position.  *Id*. at 386-87.  Dr. Mousavi opined plaintiff: would not be able to sit only, stand only, or sit and stand six hours out of an eight-hour workday;

---

[7]    Failed back syndrome is defined as "[lumbar] spinal pain of unknown origin either persisting despite surgical intervention or appearing after surgical intervention for spinal pain originally in the same topographical location" by the International Association for the Study of Pain.  *See* https://www.ncbi.nlm.nih.gov/books/NBK539777/.

1   needed to rest three to five hours in an eight-hour workday; could frequently lift

2   and carry up to 20 pounds; could not frequently use his hands for grasping, pulling,

3   pushing, or fine manipulation; could frequently push or pull with his legs; could

4   frequently bend or squat; should avoid moving machinery and driving automotive

5   equipment; and would likely miss more than three days of work in a month.  *Id*. at

6   387-88.

7        In reaching her RFC determination, the ALJ stated Dr. Mousavi's opined

8   limitations were neither consistent with nor supported by his concurrent or

9   subsequent treatment notes, which typically reflected no objective physical

10   limitations.  *Id*. at 27.  The ALJ noted that plaintiff demonstrated limited neck

11   mobility and no significant postural limitations during a February 2018 orthopedic

12   consultative examination.  *Id*.  The ALJ stated the restriction to sedentary work

13   addressed Dr. Mousavi's foot controls limitation.  *Id*.  The ALJ concluded that she

14   otherwise found Dr. Mousavi's opinion partially consistent with and supported by

15   the medical evidence to the extent reflected by the assessed RFC.  *Id.*

16        The ALJ's discussion of Dr. Mousavi's opinion suffers from the same

17   fundamental error as with Dr. Jason's opinion – the ALJ failed to articulate how

18   persuasive she found the opinion.  Although the ALJ provided slightly more

19   explanation of her supportability and consistency analysis, it still suffers from

20   vagueness, as well as other error.  For instance, the ALJ cited a lack of objective

21   physical limitations in the treatment notes to support her lack of supportability

22   finding.  The ALJ appears to imply that a treatment note must include physical

23   limitations in order to support a medical opinion, but that is not the case.  Instead,

24   objective findings in treatment notes are a basis to support medical opinions.  *See*

25   *Ramirez v. Berryhill*, 739 Fed. Appx. 428, 430 (9th Cir. 2018) (because the

26   treatment notes contained objective findings, the ALJ erred in rejecting the medical

27   opinion on the basis that it only contained subjective complaints); *Kager v. Astrue*,

28

256 Fed. Appx. 919, 921-22 (9th Cir. 2007) (physician's treatment notes contained objective findings that supported her opinion).  Here, Dr. Mousavi's treatment notes contained objective findings which may support the opined limitations.  The ALJ also presumably cited the consultative examiner's findings that plaintiff had limited neck mobility and no significant postural limitations to discuss consistency, but it is unclear whether the ALJ was arguing those findings were consistent or inconsistent with Dr. Mousavi's opinion.

Accordingly, the ALJ failed to properly consider Dr. Jason's and Dr. Mousavi's opinions.  The ALJ failed to articulate the persuasiveness of the opinions and explain with more specificity the supportability and consistency factors.

**C.**     **The ALJ Properly Considered Plaintiff's Upper Extremity Limitations**

Plaintiff contends the determined RFC's upper extremity limitations were not supported by substantial evidence.  P. Mem. at 19-21.  Specifically, plaintiff asserts that in addition to improperly dismissing Dr. Jason's and Dr. Mousavi's opined upper extremity limitations, the ALJ failed to properly consider the medical evidence which supported greater upper extremity limitations than found by the ALJ.  *Id*.  Plaintiff argues the evidence of chronic neck pain, shoulder pain, and carpal tunnel syndrome, as well as the treatment he received, demonstrates he has greater upper extremity limitations than the ALJ determined.  *Id*. at 21.

As discussed above, the ALJ reaches an RFC determination by reviewing and considering all of the relevant evidence.  20 C.F.R. § 404.1545(a)(1)-(2).  Here, the ALJ discussed the medical evidence affecting plaintiff's upper extremities that plaintiff raises in his memorandum, and concluded plaintiff could occasionally reach overhead bilaterally, frequently reach in other directions from the shoulder height down, could frequently handle and finger bilaterally, and had no restrictions on feeling.  AR at 23.

1    Regarding plaintiff's shoulders, the ALJ did not mention the exact findings

2  plaintiff cites – decreased range of motion, positive impingement tests, and

3  decreased strength – but discussed the MRIs.  AR at 20-21.  The ALJ then noted

4  plaintiff underwent a successful right shoulder surgery and had a left shoulder

5  surgery the month prior to the hearing.  *Id*.; *see id*. at 509, 512.  The evidence

6  concerning the shoulder impairments reasonably supported no greater limitations

7  than the ALJ assessed.

8    As for plaintiff's carpal tunnel syndrome, the ALJ recognized that the results

9  of an April 2017 nerve conduction study were consistent with carpal tunnel

10 syndrome and that plaintiff had a positive Tinel's sign in October 2017.  *Id*. at 22;

11 *see id*. at 272-74, 323.  But the ALJ correctly noted that the electromyogram results

12 were normal and the record did not contain more recent objective findings to

13 corroborate the earlier findings.  *See id*. at 22, 276.  While the ALJ's conclusion

14 that the condition may have "spontaneously resolved" is purely speculative, it was

15 reasonable for her to conclude the assessed limitations were sufficient.

16   Similarly, the ALJ considered the medical evidence concerning plaintiff's

17 chronic neck pain in assessing her functional limitations.  The fact that the ALJ

18 reached a different conclusion than plaintiff does not mean she failed to evaluate

19 the evidence or erred.

20   Plaintiff also asserts that the ALJ failed to explain how she reached her RFC

21 determination.  P. Mem. at 21.  As discussed above, the ALJ evaluated the medical

22 evidence.  But to the extent that plaintiff is arguing the ALJ failed to specify the

23 persuasiveness of the medical opinions, he is correct.  The ALJ must articulate the

24 persuasiveness of the medical evidence, as well as the supportability and

25 consistency factors of each medical opinion.

26   In short, the upper extremity limitations were supported by the medical

27 evidence.  Nonetheless, because the ALJ must reconsider two of the medical

28

1  opinions on remand, she should reconsider the upper extremity limitations in light

2  of those opinions as well.

3  **D.      The ALJ Properly Discounted the Lay Testimony**

4        Plaintiff argues the ALJ failed to properly consider the letter submitted by

5  his daughter, Janet Z.  P. Mem. at 21-23.

6        "[L]ay testimony as to a claimant's symptoms or how an impairment affects

7  ability to work *is* competent evidence and therefore *cannot* be disregarded without

8  comment." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006) (internal

9  quotation marks, ellipses, and citation omitted); *see Smolen*, 80 F.3d at 1288; *see*

10  *also* 20 C.F.R. § 404.1513(d)(3) (the Commissioner will consider evidence from

11  other sources, including social welfare agency personnel).  The ALJ may only

12  discount the testimony of lay witnesses if he provides specific "reasons that are

13  germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993);

14  *see Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a

15  claimant's symptoms is competent evidence that an ALJ must take into account,

16  unless he or she expressly determines to disregard such testimony and give reasons

17  germane to each witness for doing so.").

18        Plaintiff's daughter submitted a letter, dated October 16, 2019, in support of

19  plaintiff's application.  AR at 252.  In the letter, Janet Z. stated that plaintiff

20  suffered from debilitating chronic pain. *Id*.  She stated that plaintiff's pain requires

21  him to "rest multiple times throughout the day" in order to ice his neck, back, and

22  shoulders, as well as stretch. *Id.*  She further stated that plaintiff has difficulty

23  sleeping. *Id.*  Janet Z. explained plaintiff has taken every measure to lessen his

24  pain, including surgeries, physical therapy, massage, dietary changes, and

25  chiropractic care. *Id*.

26        The ALJ discounted the letter because it offered few details regarding

27  plaintiff's functional limitations.  AR at 27.  This was a germane reason for

28

rejecting the letter.  An ALJ must consider lay testimony concerning a claimant's symptoms, but here, the letter does not provide sufficient detail.  At most, Janet Z. states plaintiff must rest multiple times a day due to pain.  But Janet Z. does not describe the frequency or length of plaintiff's rests.  And even if it was error for the ALJ not to consider Janet Z.'s letter, the error was harmless because the letter cited the same rest requirement as plaintiff stated in the Exertional Questionnaire, which the ALJ discounted.  *See Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009) (if a court gave clear and convincing reasons for discounting claimant's testimony and the lay testimony is similar, then the ALJ's reasons apply equally to the lay testimony); *see* AR at 211.

Accordingly, the ALJ properly considered the lay testimony.

**V.**

**REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  Typically, in accordance with the "ordinary remand rule," the reviewing court will remand to the Commissioner for additional investigation or explanation upon finding error by the ALJ.  *Treichler v. Comm'r*, 775 F.3d 1090, 1099 (9th Cir. 2014).  Nonetheless, it is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."  *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits).  But where there are

1  outstanding issues that must be resolved before a determination can be made, or it

2  is not clear from the record that the ALJ would be required to find a plaintiff

3  disabled if all the evidence were properly evaluated, remand for further

4  proceedings is appropriate.  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th

5  Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).  In addition,

6  the court must "remand for further proceedings when, even though all conditions

7  of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates

8  serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

9        Here, remand is required to allow the ALJ to reconsider the opinions of Dr.

10  Jason and Dr. Shahryar.  On remand, the ALJ shall articulate how persuasive she

11  finds these medical opinions, as well as the other medical opinions, and explain

12  how she considered the supportability and consistency factors in reaching her

13  findings.  The ALJ shall then reassess plaintiff's RFC, and proceed through steps

14  four and five to determine what work, if any, plaintiff was capable of performing.

**VI.**

**CONCLUSION**

17        IT IS THEREFORE ORDERED that Judgment shall be entered

18  REVERSING the decision of the Commissioner denying benefits, and

19  REMANDING the matter to the Commissioner for further administrative action

20  consistent with this decision.

22  DATED: September 30, 2022

_____
SHERI PYM
United States Magistrate Judge